**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 24, 2017**

# In the Court of Appeals of Georgia

A17A0694. FEDERAL NATIONAL MORTGAGE ASSOCIATION    BR-027
       v. HARRIS.

BRANCH, Judge.

After buying a residential property from a lender who had obtained that property at a foreclosure sale, the Federal National Mortgage Association ("Fannie Mae") obtained a writ of possession from a magistrate court. The occupant and former owner of the property, Rickey Harris, appealed to Chatham County State Court, which concluded after a bench trial that Fannie Mae was not entitled to the writ. We granted Fannie Mae's application for review of the state court's judgment. On appeal, Fannie Mae argues that the state court erred in failing to consider the documents proving its right of possession and in failing to issue the writ. We agree with the first of these contentions and order a new trial.

"We apply a de novo standard of review to questions of law" raised in a dispossessory proceeding, "and factual findings made by the trial court shall not be set aside unless clearly erroneous." *Mackey v. Fed. Nat. Mtg. Assn.*, 294 Ga. App. 495, 496 (669 SE2d 397) (2008) (footnote omitted).

So viewed, the undisputed facts[1] show that in December 2006, Harris executed a security deed transferring title to his Savannah home to Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for SunTrust Mortgage in exchange for a $215,000 loan. This security deed was recorded the following week. On January 21, 2009, MERS assigned the security deed to Litton Loan Servicing, LLP. In April 2011, Harris recorded documents which purported to rescind the loan on grounds including that Harris's note was obtained by fraud. On July 8, 2011, MERS mistakenly executed a cancellation of the security deed. On September 20, 2011, the successor to MERS assigned the security deed to Green Tree Servicing, LLC.

---

[1] Harris has not filed an appellee's brief, which means that we would be entitled to accept Fannie Mae's statement of facts as true. Court of Appeals Rule 25 (b) (1) (a failure to point out "any material inaccuracy or incompleteness" in an appellant's statement of facts "shall constitute consent to a decision based on" that statement; "[e]xcept as controverted, appellant's statement of facts may be accepted by this Court as true."). Nonetheless, our own statement of the facts is based on the undisputed evidence as it appears in the appellate record.

On May 4, 2012, Green Tree sued Harris in Chatham County Superior Court for a declaration that MERS's cancellation of the security deed was void and that the deed remained in effect. Green Tree also filed a notice of lis pendens. Harris was served but did not file an answer. In February 2013, and noting the absence of any evidence to show that Harris had repaid "any of the funds received pursuant to the note," the superior court granted Green Tree's motion for default judgment, finding that the security deed had been cancelled "by mistake," that the cancellation was "void," that the security deed "remain[ed] in full force and effect," and that Harris "remain[ed] obligated to pay all sums secured by" that deed. There is no indication in the record that Harris appealed this judgment.

On February 2, 2016, after Harris had defaulted on the note, Green Tree, now known as Ditech Financial, LLC, conducted a foreclosure sale, bought the property for $122,300, and executed a deed under power of sale. On March 15, 2016, Ditech executed a limited warranty deed transferring the property to Fannie Mae.[2]

On March 24, 2016, Fannie Mae brought this dispossessory action in Chatham County Magistrate Court and included a notarized affidavit stating that Fannie Mae

---

[2] The deed under power of sale and the limited warranty deed were recorded on March 30, 2016.

was the owner of the property and that Harris remained in possession as a tenant at sufferance or at will.[3] Harris answered that he was "not indebted to [Fannie Mae] in any amount" and counterclaimed for $43,000,000 on the ground that the property had been "released from debt/mortgage" in June 2011. On April 8, 2016, after a hearing, the magistrate court granted a writ of possession to Fannie Mae, denied Harris's counterclaim, and required Harris to pay $1200 per month "until [any] appeal is finally determined." On April 15, Harris appealed to Chatham County State Court.[4]

On June 22, 2016, the matter came up for de novo review in the state court, with Fannie Mae represented by counsel and Harris representing himself. Harris

---

[3] See OCGA § 44-7-50 (a) ("[I]n all cases where . . . lands or tenements . . . are held and occupied by any tenant at will or sufferance, . . . the owner may . . . demand the possession of the property so rented, leased, held, or occupied. If the tenant refuses or fails to deliver possession when so demanded, the owner or the agent, attorney at law, or attorney in fact of the owner may immediately go before the judge of the superior court, the judge of the state court, or the clerk or deputy clerk of either court, or the judge or the clerk or deputy clerk of any other court with jurisdiction over the subject matter, or a magistrate in the district where the land lies[,] and make an affidavit under oath to the facts. . . .")

[4] See OCGA § 15-10-41 (b) (1) ("[A]ppeals may be had from judgments returned in the magistrate court to the state court of the county or to the superior court of the county[,] . . . the same to be a de novo appeal"); *Mackey*, supra, 294 Ga. App. at 496 (1) ("because the state court is a court of record with jurisdiction over the dispossessory action," a state court did not err in denying a motion to transfer an appeal from the grant of a writ of possession to superior court) (footnote and punctuation omitted).

argued that he had not received proper notice of the superior court's proceedings, but admitted that he had not appealed that court's decision. Fannie Mae offered recorded copies of the deed under power and limited warranty deed, submitted a file-stamped copy of the superior court order restoring the original security deed, and argued that these documents proved its ownership and thus its right to possession of the property. The trial court then asked Harris to take the stand, from which Harris introduced various documents including the cancellation of the original security deed. Fannie Mae cross-examined Harris as to the superior court's order voiding the cancellation, during which Harris admitted that he did not have any evidence that the debt had been reduced or eliminated after the date of the superior court's judgment. When Fannie Mae asked whether "the only defense" Harris was asserting was "that the security deed should [ ] have been cancelled" such that he "should own the property," Harris replied, "Yes."

After a series of questions from the bench as to the purported cancellation of the debt and Harris's notice of the superior court action, the trial court noted that Harris would have to take up the issue of ownership in the superior court. The trial court also stated that as to the instant case involving possession, its "only real question [was] whether any of the documents" introduced by Fannie Mae were

5

admissible, being "not certified" and "hearsay," with some of them coming from "a state not Georgia."[5] When Fannie Mae observed that Harris had not objected to the introduction of these documents, the trial court responded, "I'm objecting to it," and that "if it's not admissible, it's not coming in here." The proceedings ended shortly afterward.

In a judgment filed on September 29, 2016, the trial court noted that as to the document "purporting to be" the deed under power, it was neither "an original document" nor a "certified copy" and that "no witnesses" had been called "to testify at trial to authenticate or otherwise attest to the validity" of the document. As to the purported limited warranty deed, the court noted that the document was "neither the original nor a certified copy." As to the superior court's 2013 judgment, the court noted that the document, which had voided the cancellation of the original security deed, was neither "an original document nor a certified copy," and merely "purport[ed]" to be from the superior court. After summarizing the documents offered into evidence by Harris, the court concluded that Fannie Mae "had failed to carry it[s] burden of proving that it [was] entitled to possession" of the property "by a

---

[5] The deed under power and the limited warranty deed were signed and notarized in South Dakota.

preponderance of the evidence" and entered judgment in favor of Harris. We granted Fannie Mae's application for discretionary review.[6]

1. Fannie Mae first argues that the trial court erred when it excluded the superior court judgment, the deed under power, and the limited warranty deed as unauthenticated and inadmissible.

We review a trial court's decision regarding the admission or exclusion of evidence only "for an abuse of discretion." *Koules v. SP5 Atlanta Retail Ventures*, 330 Ga. App. 282, 285 (2) (767 SE2d 40) (2014) (citation and punctuation omitted).

The new Evidence Code, which became effective on January 1, 2013, provides that official documents are self-authenticating if they "bear[ ] a seal purporting to be that of . . . . any state . . . or of a political subdivision, department, officer, or agency thereof," or if they "bear the signature in an official capacity of an officer or employee" of such state or political subdivision. OCGA § 24-9-902 (1), (2); see also OCGA § 24-9-920 (providing for authentication by "[t]he certificate or attestation of any public officer either of this state or any county thereof"). As the state court

---

[6] See OCGA § 5-6-35 (a) (11) (requiring an application for "[a]ppeals from decisions of the state courts reviewing decisions of the magistrate courts by de novo proceedings so long as the subject matter is not otherwise subject to a right of direct appeal").

correctly noted, none of the records at issue here was thus sealed or certified. See

*United States v. Jimenez-Lopez*, 873 F.2d 769, 771 (5th Cir. 1989) (a conviction of

illegal entry was not admissible under Federal Rule of Evidence 902 when the

document "was not under seal and no public officer of the [issuing] court certified

under seal that the document was genuine").

OCGA § 24-9-901 sets out the standards for the authentication and admission

of unsealed or uncertified documents as follows:

> (a) The requirement of authentication or identification as a condition precedent to admissibility *shall* be satisfied by evidence sufficient to support a finding that matter in question is what its proponent claims.
> (b) By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements [of subsection (a)]:
> (4) *Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances*; [or]
> . . .
> (7) Evidence that a document authorized by law to be recorded or filed and in fact *recorded or filed in a public office* or a purported public record, report, statement, or data compilation, in any form, *is from the public office where items of this nature are kept. . . .*

OCGA § 24-9-901 (a), (b) (emphasis supplied). A party seeking to authenticate a

document under Rule 901 is required to present "'sufficient evidence to make out a

prima facie case that the proffered evidence is what it purports to be. Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the [factfinder].'" *Brown v. State*, 332 Ga. App. 635, 639 (2) (774 SE2d 708) (2015) (citation omitted), quoting *United States v. Belfast*, 611 F.3d 783, 819 (VI) (C) (11th Cir. 2010); see also *Jimenez-Lopez*, 873 F.2d at 772 (testimony of special agent as to his knowledge of a document's chain of custody was "circumstantial evidence to support the conclusion that the document was an official record").

Although the trial court's order does not state explicitly that the superior court's 2013 judgment, the deed under power, and the limited warranty deed were inadmissible, its warning at the hearing that it would not admit unauthenticated documents, its later description of all three documents as "purported," and its judgment in favor of Harris lead us to the conclusion that it abused its discretion when it failed to consider whether the documents were admissible under Rule 901.[7] *Koules*, 330 Ga. App. at 287-288 (2) (a trial court failed to exercise its discretion

---

[7] As we have suggested, moreover, Harris did not raise any objection, hearsay or otherwise, to Fannie Mae's documentary evidence. See *Jimenez-Lopez*, 873 F.2d at 773 (affirming documents' admission when defendant did not raise any hearsay objection to officer's testimony concerning a document's chain of custody).

properly when it failed to consider circumstantial evidence of an e-mail and other documents' authenticity, including "the contents, appearance, and substance of each document"). We therefore vacate the court's judgment and remand the case with direction that the state court conduct a new trial in which it makes discretionary determinations as to whether the documents are admissible under Rule 901 and whether they are authentic, and then renders a judgment on Fannie Mae's right to possession of the property.[8] Id. (vacating and remanding when the trial court had failed to consider the documents at issue, which amounted to a failure to exercise its discretion properly).

2. Although Fannie Mae also asks us to direct the state court to issue a writ of possession, we cannot do so because the state court remains the factfinder as to the authenticity of all documents admitted into evidence. When the state court considers

---

[8] Although the trial court did not explicitly rule on the issue of hearsay, we note the hearsay exception set out in OCGA § 24-8-803 (14): "The record of a document purporting to establish or affect an interest in property, as proof of the content of the original recorded document and its execution and delivery by each person by whom it purports to have been executed, if the record is a record of a public office and an applicable law authorizes the recording of documents of that kind in such office[,]" are among the documents that "shall not be excluded by the hearsay rule[.]" See also *Amah v. Whitefield Academy*, 331 Ga. App. 258, 261-262 (2) (770 SE2d 650) (2015) (noting that recorded deeds were subject to the hearsay exception of OCGA § 24-8-803 (14) before concluding that the issue of their admissibility had been waived on appeal).

Fannie Mae's documents on remand as directed, it will be authorized to determine both the admissibility and the authenticity of those documents as well as whether Fannie Mae has, in light of all the evidence before the court, proven its right to possession of the property at issue. See *Brown*, 332 Ga. App. at 639 (2) ("the ultimate question of authenticity is decided by the [factfinder]"). This new judgment would stand unless the evidence demanded a contrary result. See, e.g., *Ivey*, 266 Ga. at 144-145 (3) (reversing the grant of a trustee's motion for involuntary dismissal when the evidence demanded a finding that a security deed executed by the trustee was invalid).

3. On remand, the trial court should also consider whether Harris has failed to pay $1200 monthly rent as required by the magistrate court such that a writ of possession should issue on that ground alone.

OCGA § 44-7-56 provides that a tenant appealing the issuance of a writ of possession

> shall be required to pay into the registry of the court all sums found by the trial court to be due for rent in order to remain in possession of the premises. The tenant shall also be *required to pay all future rent as it becomes due into the registry of the trial court . . . until the issue has been finally determined on appeal*.

(Emphasis supplied.) In its April 22 order transferring the case to the state court, the magistrate court noted that Harris had failed to pay any money into the court registry, but did not find that Harris was delinquent. At the outset of the de novo state court proceeding, however, which occurred two and a half months after the magistrate court's judgment, counsel for Fannie Mae acknowledged that Harris had provided a single $1200 "bond payment."

There is no indication in the record before us that Harris has continued to make payments of $1200 per month during the pendency of his appeal to state court, as required by OCGA § 44-7-56. If Harris has failed to make such payments, the question of possession will have become moot, and a writ should issue without further delay. *Mitchell v. Excelsior Sales & Imports*, 243 Ga. 813, 816 (2) (256 SE2d 785) (1979) (when a tenant failed to pay rent and to post a supersedeas bond as ordered by the trial court, "any issue as [the tenant's] right to possession of the premises [was] moot").

*Judgment vacated and case remanded with direction. McFadden, P. J., and Bethel, J., concur.*